UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ANDREAS ALBERTI,<br>      *Plaintiff*,<br><br>     v.<br><br>THE RECTOR AND VISITORS OF THE<br>UNIVERSITY OF VIRGINIA,<br>      *Defendant*. | CASE NO. 3:21-cv-14<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

In July 2020, the University of Virginia's School of Engineering and Applied Science dismissed Plaintiff Andreas Alberti, a Swiss national, from its chemical engineering doctoral program and terminated his employment as a graduate research assistant. Alberti alleges that his advisor, Professor Giorgio Carta, discriminated against him based on his national origin. Specifically, Alberti contends that Defendant Rector and Visitors of the University of Virginia ("UVA") discriminated against him in violation of Title VII (Count I) and Title VI (Count II). Dkt. 1. Alberti also claims that UVA retaliated against him for reporting Carta's conduct (Counts III and IV). *Id.* UVA has moved to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). Dkt. 7.

For the reasons below, the Court will grant UVA's motion with respect to all claims.

     **I.**  **ALLEGED FACTUAL BACKGROUND**

For the purposes of ruling on the motion to dismiss, the Court accepts as true the following allegations set forth in the first amended complaint.

    **A. Alberti's Enrollment and Employment at the University of Virginia**

In January 2016, Andreas Alberti, a Swiss national, enrolled as a graduate student in the University of Virginia's chemical engineering doctoral program and served as a graduate

research assistant. Dkt. 1 at ¶¶ 15–16. Until June 2020, Giorgio Carta, a UVA professor and native of Italy, supervised Alberti's doctoral research, which has applications in the biopharmaceutical field relating to manufacturing gene therapy drugs for rare medical conditions. *Id.* at ¶¶ 17–19, 21, 51. While conducting his doctoral research, Alberti collaborated on a larger project with research and development teams at Pfizer, Inc. *Id.* at ¶ 20. Alberti's research on this project made up nearly all the work he performed for Carta. *Id.* at ¶ 60.

### B. Carta's Comments

During Alberti's time in Carta's laboratory, Carta allegedly made several comments to Alberti relating to his Swiss nationality or his language abilities. In 2016, Carta told Alberti that the Swiss Federal Institute of Technology, where Alberti had earned bachelor and master of science degrees, did not properly educate him. *Id.* at ¶¶ 12, 22. That same year, Carta also told Alberti that the German he spoke was not "the correct German language . . . because it is the German used by the Swiss." *Id.* at ¶ 23. Carta also repeatedly told Alberti that he "didn't speak proper English." *Id.* at ¶ 25.

When Alberti brought Carta Swiss chocolates as a gift in late 2016 or early 2017, Carta stated: "At least[] the Swiss are able to manufacture chocolate." *Id.* at ¶ 24. In October 2018, Carta told Alberti that people from Switzerland were "nationalists" and "hunters" who "have to defend their country." *Id.* at ¶¶ 27–28. In October 2018 and October 2019, Carta stated that "grocery stores in Switzerland don't provide good salads and veggies." *Id.* at ¶ 28. In 2019, while discussing Alberti's past experience with kidney stones, Carta said that "people from [Alberti's] area are predisposed to kidney stones." *Id.* at ¶ 30.

At some point, Carta also allegedly made disparaging statements about Alberti and his research, including that Alberti "doesn't make things work because [he has] a masochistic

personality," that his "intellectual abilities are limited," and that he is "missing intellectual curiosity." *Id.* at ¶¶ 32–33. Another time, when discussing what would happen to Alberti if Pfizer stopped funding their research, Carta made a throat-slashing gesture. *Id.* at ¶ 34.

### C. Alberti's Complaints

In July 2018, Alberti reported Carta's comments about Alberti's Swiss national origin to UVA's Office for Equal Opportunity and Civil Rights. *Id.* at ¶¶ 35–36.

After Alberti lodged his complaint, he saw in Carta's laboratory a letter in which Carta apologized for his work relationship with an unnamed student and insisted that he wanted a good work relationship. *Id.* at ¶ 38.

Alberti's doctoral research proposal examination was originally scheduled for June 2018. *Id.* at ¶ 39. Carta required Alberti to postpone the exam, which Alberti passed in January 2019. *Id.* at ¶¶ 39–41. During the fall semester of 2019 and the spring semester of 2020, Carta allegedly set and communicated to Pfizer unrealistic deadlines that put pressure on Alberti to deliver modeling work within a few weeks. *Id.* at ¶ 42. Although Alberti met the deadlines Carta set, Carta delayed presenting the results to Pfizer. *Id.* at ¶¶ 43–44.

In 2019, Alberti discussed Carta's behavior with the graduate program coordinator and the chair of UVA's chemical engineering department. *Id.* at ¶¶ 45–49. Although Alberti asked to be reassigned to a different supervisor, the department chair refused his request and took no action to resolve Alberti's complaint. *Id.*

### D. Alberti's Performance

Although Alberti and Carta's research project was scheduled to run from 2016 to 2018, Pfizer—pleased with the results up to 2018—extended the project for another two years and provided $100,000 in additional financial support. *Id.* at ¶¶ 52–53.

For the spring semester of 2019, Carta gave Alberti a grade of "unsatisfactory." *Id.* at ¶ 65.

In November 2019, Carta submitted Alberti's abstract regarding the completed research project to Pfizer for approval. *Id.* at ¶ 54. In December, Pfizer approved the abstract and told Carta that Alberti was performing valuable research. *Id.* at ¶¶ 55–56. In January 2020, Carta submitted Alberti's abstract and results of the research project from 2016 to 2020 to an international conference. *Id.* at ¶ 57. Carta also committed to present additional mathematical modeling and simulation work that Alberti completed for Pfizer at the international conference. *Id.* at ¶¶ 58–59.

For the spring semester of 2020, Carta gave Alberti another grade of "unsatisfactory." *Id.* at ¶¶ 63, 65. In June 2020, the Dean's Office of UVA's School of Engineering and Applied Science dismissed Alberti for receiving two "unsatisfactory" grades. *Id.* at ¶¶ 64–65.

The same month, Alberti appealed the second "unsatisfactory" grade for the spring semester of 2020 to the Graduate Studies Committee ("GSC") of the School of Engineering and Applied Science. *Id.* at ¶ 66. On July 29, the GSC denied Alberti's appeal and upheld his dismissal from the chemical engineering doctoral program and termination from his position as a graduate research assistant. *Id.* at ¶ 67. The GSC based its decision on materials from Carta, which it did not disclose to Alberti. *Id.* at ¶ 68.

Alberti filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 18, 2020. *Id.* at ¶ 10. On January 29, 2021, the EEOC issued him a Notice of Right to Sue. *Id.* at ¶ 11.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id*. at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). The court cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

### A. Title VII Discrimination Claim

The first count in Alberti's complaint alleges Title VII discrimination. Title VII prohibits employers from "discharg[ing]" or "discriminat[ing] against" an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of [his] . . . national origin." 42 U.S.C. § 2000e-2(a)(1). An employee states a plausible claim of discrimination in violation of Title VII when he alleges that "national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).

To survive a motion to dismiss on a Title VII discrimination claim, a "plaintiff need not plead a prima facie case of discrimination,"[1] but instead must "allege facts to satisfy the elements of a cause of action created by" Title VII. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (internal citations omitted) (evaluating plaintiff's factual allegations without engaging in *McDonnell Douglas* prima facie case analysis to determine whether plaintiff plausibly alleged that his employer discriminated against him because of his race).

Although the parties do not dispute that Alberti alleges that he is a member of a protected class based on his Swiss national origin, UVA argues that Alberti fails to state a plausible Title

---

[1] To prevail, a plaintiff ultimately must provide either "direct or circumstantial evidence" that discrimination motivated the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff relying on circumstantial evidence, as Alberti does, may prove a prima facie case of discrimination under the *McDonnell Douglas* framework by establishing "(1) membership in a protected class, (2) [an adverse employment action], (3) while otherwise fulfilling [UVA's] legitimate expectations at the time of [the adverse employment action], and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 616 n.8 (quotation marks and citation omitted). *See also Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (per curiam) (affirming district court's dismissal of Title VII employment discrimination claim and citing similar prima facie case formulation); *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011) (providing similar prima facie case formulation).

6

VII discrimination claim because he fails to allege (1) that UVA took an adverse employment action against him and (2) that any adverse employment action was motivated in part by Alberti's national origin. The Court concludes that UVA is correct on both grounds, and that Alberti's factual allegations are not sufficient to state a plausible claim beyond the speculative level that UVA discriminated against him because of his national origin.

1. *Adverse Employment Action*

Although UVA does not dispute that a graduate student and research assistant like Alberti may be considered an employee under Title VII, UVA argues that Alberti has not alleged that UVA took any adverse action against him with respect to his status as an employee rather than as a student. Dkt. 8 at 12–13.

Other courts to consider this issue have concluded that when a Title VII plaintiff has the "dual role" of student and employee, the plaintiff must allege an adverse action that relates only to his status as an employee to survive a motion to dismiss. *See, e.g.*, *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 725 (N.D.N.Y. 2001). In *Bucklen*, a former graduate student and teaching assistant—who failed the oral portion of his doctoral candidacy examinations three times before the chairman of his department informed him that he would need to drop out of the program—sued Rensselaer Polytechnic Institute for national origin discrimination in violation of Title VII. *Id.* at 722. In dismissing the claim, the court "acknowledge[d] the unique dual role of graduate students, as potentially both students and employees," but declined to "extend the parameters of Title VII to encompass purely academic decisions, such as the testing and qualification of doctoral students, that have only a tangential effect on one's status as an employee." *Id.* at 725. *See also Stewart v. Morgan State Univ.*, 46 F. Supp. 3d 590, 596 (D. Md. 2014), *aff'd*, 606 F. App'x 48 (4th Cir. 2015) ("Plaintiff's argument

7

that he received two 'Cs' from [a professor] based on racial discrimination [in violation of Title VII] is unavailing considering that the grades he received in those two classes concerned his role as a student, *not* as an employee in the internship.") (emphasis in original); *Stilley v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 968 F. Supp. 252, 261 (W.D. Pa. 1996) (noting that "plaintiff's work on her dissertations is closely related to her [research] work" but that "the Title VII inquiry must focus only on the employee-employer relationship," and declining, on summary judgment, to consider any "issues pertaining to the completion of plaintiff's dissertation[, which] relate to plaintiff's role as a student and not as an employee," in the Title VII analysis).

Alberti alleges that he was employed as a research assistant and spent almost all his time at UVA on his research. Dkt. 1 at ¶¶ 16, 60. He alleges that Carta gave him two failing grades, that UVA therefore dismissed him from the graduate program, that he appealed the second failing grade, and that UVA upheld his dismissal from the graduate program and termination from his graduate research assistant position. *Id.* at ¶¶ 62–68. Significantly, Alberti has not alleged an adverse action relating only to his status as an employee. And, although he was dismissed from the doctoral program and terminated from his research assistantship at the same time, the complaint alleges that the impetus for Alberti's academic dismissal was two failing grades and that his termination from his research assistantship was incidental to his academic dismissal. Dkt. 1 at ¶¶ 64–68. In short, the complaint alleges an adverse action with regard to Alberti's status as a graduate student—not as a graduate research assistant.

Thus, Alberti has failed to sufficiently plead an adverse employment action.

2. *Motivation Based on National Origin*

UVA next argues that Alberti's complaint fails to plead that he was discriminated against because of his national origin. UVA raises three particular arguments on this point: first, that any

8

comments made by Carta did not rise to the level of discrimination on the basis of a protected characteristic; second, that there was no nexus between Alberti's dismissal and any allegedly discriminatory comments made by Carta; and third, that Alberti was not meeting UVA's expectations for his continued enrollment in the graduate program, which overcomes any inference that UVA used his unsatisfactory grades as a pretext for discrimination based on his national origin. Dkt. 1 at 7–11.

With respect to UVA's argument about the nature of Carta's alleged comments, it is true that Title VII requires something more than simple rudeness; the statute is not "a general civility code for the American workplace." *Darvishian v. Green*, 404 F. App'x 822, 830 (4th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)); *see also Bennett v. CSX Transp., Inc.*, 552 F. App'x 222, 229 (4th Cir. 2014) ("[N]either rudeness nor insensitivity is actionable under Title VII."). Rather, "Title VII makes unlawful certain, defined intentional acts of discrimination." *Id.* Some of Carta's comments that Alberti alleges rose to the level of discrimination clearly do not—such as his suggestion that Swiss grocery stores do not have good salads or that people from Switzerland are predisposed to kidney stones. Others are closer to the line—such as his alleged comment that Alberti's German was not "the correct German language . . . because it is the German used by the Swiss." *See Abdelhamid v. Sec'y of the Navy*, 525 F. Supp. 3d 671, 686 (E.D. Va. 2021) (holding on summary judgment that a supervisor's comments "that plaintiff was dirty and unable to speak proper English could be viewed by a reasonable factfinder as derogatory stereotypes based on plaintiff's race or national origin"). At this juncture, the Court need not decide whether Carta's alleged comments rise to the level of discrimination based on national origin because Alberti's claims fail on other grounds.

9

Moving to UVA's second argument, the Court holds that Alberti's Title VII claim also fails because there was no nexus between Alberti's dismissal and Carta's derogatory comments. Indeed, "[i]solated remarks unrelated to the challenged employment decision are insufficient to provide direct evidence of discrimination." *Finkle v. Howard Cnty.*, 640 F. App'x 245, 248 (4th Cir. 2016). There must be a reasonable temporal relationship between the isolated, allegedly discriminatory comments and the adverse employment action. *See McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 306 (4th Cir. 2008). Here, there was no such temporal relationship between any of Carta's comments and Alberti's dismissal from the graduate program. Carta's alleged comments were isolated statements spanning several years. Alberti alleges a small handful of comments spanning from 2016 to 2019, with the most recent, in October 2019, being several months before UVA dismissed Alberti from the graduate program in spring 2020. Dkt. 1 at ¶¶ 22, 24, 27, 29, 30, 67. Because Alberti has not pled a sufficient nexus between Carta's comments and his dismissal, he has failed to plead another necessary element of his Title VII discrimination claim.[2]

### 3. *Conclusion to Title VII Claim*

In sum, Alberti's Title VII claim fails on two fronts. First, he has failed to plead an adverse employment action because the adverse action he alleges relates to his status as a

---

[2] With respect to UVA's third argument, the Court notes that a motion to dismiss is not the appropriate stage of the proceedings at which the Court may entertain whether Alberti was or was not meeting his employer's legitimate expectations. Whether Alberti was meeting UVA's legitimate expectations is the third element of the *prima facie* case that Alberti must ultimately make out under Title VII. *See McDonnell Douglas*, 411 U.S. at 802 (establishing elements of the *prima facie* case); *see also Bing*, 959 F.3d at 616 n.8. But Alberti does not need to plead all the elements of the *prima facie* case at the motion to dismiss stage; he must only "allege facts to satisfy the elements of a cause of action" for Title VII discrimination. *Bing*, 959 F.3d at 616. Those elements are whether UVA discharged or discriminated against him "with respect to his compensation, terms, conditions, or privileges of employment" because of his national origin. *Id.* at 616–17 (quoting 42 U.S.C. § 2000e-2(a)(1)).

graduate student rather than his status as a graduate research assistant. Second, he has failed to plead a sufficient temporal nexus between any of Carta's alleged comments and his dismissal from the program. Thus, the Court will dismiss Alberti's Title VII discrimination claim.

### B. Title VI Discrimination Claim

Under Title VI, "[n]o person in the United States shall, on the ground of . . . national origin . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. UVA does not dispute that it is subject to Title VI.

First, the parties dispute whether Alberti suffered an "adverse action." A student who has been dismissed from a federally funded university because of their race, color, or national origin can bring a discrimination claim under Title VI. *See, e.g.*, *Maisha v. Univ. of N.C.*, 641 F. App'x 246, 251 (4th Cir. 2016). Thus, to the extent that Alberti is required to plead that he suffered an "adverse action" to bring a Title VI discrimination claim, he has done so.

However, as with Alberti's Title VII claim, the issue remains whether Alberti alleges a sufficient nexus between Carta's comments and his dismissal from the graduate program. The Court holds again that there was not. As with Alberti's Title VII discrimination claims, there must have been a sufficient temporal nexus between Carta's alleged comments and Alberti's dismissal from the graduate program. *See Finkle*, 640 F. App'x at 248. For the same reasons as discussed above in Part III.A.2 with respect to the Title VII discrimination claim, the Court holds that Alberti has not adequately pled that there was a sufficient temporal nexus between Carta's isolated remarks and his dismissal from the graduate program. Thus, the Court will dismiss Alberti's Title VI discrimination claim.

### C. Title VII Retaliation Claim

In Count III of the complaint, Alberti alleges that UVA retaliated against him for reporting Carta's actions to UVA's Office for Equal Opportunity and Civil Rights ("OEO"). Dkt. 1 at ¶¶ 35–38; 81–86. Specifically, he alleges that after he reported Carta's actions to OEO, Carta "intensified his harassment, discrimination, and retaliation" against him. *Id.* at ¶ 37. Alberti also alleges that administrators within the Department of Chemical Engineering knew about Alberti's report to OEO but failed to prevent Carta from retaliating. *Id.* at ¶¶ 45–49.

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for "oppos[ing] any practice" made unlawful by Title VII or having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). UVA argues that Alberti has failed to plead a plausible Title VII retaliation claim in two ways: first, that Alberti did not suffer an "adverse employment action," and second, that there was no causal connection between his protected activity (reporting Carta) and the adverse action. Dkt. 8 at 16.

With respect to UVA's first argument, the Court notes that Alberti is not required to plead an adverse *employment* action, as UVA argues. A plaintiff bringing a Title VII retaliation claim need not allege that the defendant's retaliatory action affected the terms or conditions of the plaintiff's employment. *White*, 548 U.S. at 70. Rather, the plaintiff must allege that the defendant's conduct was "materially adverse to a reasonable employee," meaning that the conduct must have been harmful enough that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. The conduct prohibited by the antiretaliation provision need not be "workplace-related or employment-related." *Id.* at 67. Thus, the fact that the adverse action that Alberti alleges was his dismissal from the graduate program

(i.e., an academic punishment rather than an employment-related one) does not defeat his Title VII retaliation claim.

Although Alberti has sufficiently alleged an adverse action, he has not plausibly pled that there was a sufficient causal connection between his report to OEO and his dismissal from the graduate program, or any other alleged adverse action. To make out a Title VII retaliation claim, the plaintiff must plead a "very close" temporal proximity between the protected activity (Alberti's report to OEO, here) and the adverse action. *See Clark Cnty Sch. Dist v. Breeden*, 532 U.S. 268, 273 (2001); *Pacual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). There is no established limit on how much time is "very close," but the Supreme Court has favorably cited lower court decisions holding that a few months is not "very close." *See Clark Cnty Sch. Dist.*, 532 U.S. at 273–74. Alberti alleges that he reported Carta to OEO in July 2018. Dkt 1 at ¶ 35. The next of Carta's alleged adverse actions did not occur until spring 2019, when Carta gave Alberti an "unsatisfactory" grade. *Id.* at ¶ 65. Alberti's dismissal from the program did not occur until summer 2020. *Id.* at ¶¶ 64, 67. Thus, there was almost a year between Alberti's report to OEO and the next alleged adverse action, and almost two years until his ultimate dismissal from the program. His report to OEO was not "very close" in time to any adverse action.

Thus, the Court will dismiss Alberti's Title VII retaliation claim.

### D. Title VI Retaliation Claim

Alberti's final claim is for retaliation under Title VI. To state a claim for Title VI retaliation, Alberti must show (1) that he was engaged in protected activity; (2) that UVA took a material adverse action against him; and (3) that a causal connection existed between the protected activity and the adverse action. *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003).

For the same reasons discussed above with respect to the Title VII retaliation claim, Alberti has failed to plead sufficient facts for the causal connection element. Taking the facts alleged in the complaint as true, there was simply too much time between Alberti's report to OEO and any alleged adverse action by Carta or anyone else at UVA. Thus, Alberti has failed to plead a plausible claim for Title VI retaliation, and the Court will dismiss the Title VI retaliation claim in Count IV.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss, Dkt. 7, in full. A corresponding order will follow.

The Clerk of Court is directed to send this opinion to all counsel of record.

Entered this  9th  day of December, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE